STEVEN G. KALAR
Federal Public Defender
DANIEL P. BLANK
Senior Litigator
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:     (415) 436-7700
Facsimile:     (415) 436-7706
Email:          Daniel_Blank@fd.org

Counsel for Defendant HARRIS

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRAZIL HARRIS,<br><br>Defendant. | **Case No.:** CR 20–0027 WHA<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Court:**    **Hon. William Alsup**<br>**Date:**     July 21, 2020<br>**Time:**     1:00 p.m. |

**INTRODUCTION**

Defendant Brazil Harris was actively engaged in intensive drug treatment following his release from state custody in the instant case when federal charges for the same conduct interrupted that effort. Under the very unusual circumstances of this case, Mr. Harris respectfully requests that the Court sentence him to a term of imprisonment of "time served" with a condition of residential drug treatment as part of a highly structured term of supervised release.

**BACKGROUND**

Brazil Harris, age 30, grew up without a father and started abusing drugs in 2007 at age 14, including marijuana, cocaine, Ecstasy and methamphetamine. PSR ¶¶ 54-56, 69-72; *see also* Attachment A (Letters and Photos) [hereinafter "Att. A"]. This early drug use appears to have been related to an untreated learning disability requiring an Individualized Education Program. *See id.* ¶ 77. Specifically, while in school, Mr. Harris starting taking stimulants to help him focus in the classroom and then marijuana to calm himself down. *See id.; see also* Att. A. Although never involved in any gang, Mr. Harris had several juvenile and adult convictions between 2007 and 2012, when he was 23 years old. PSR ¶¶ 25-35. The most serious was for pimping in 2012. *See id.* ¶ 34.

Since 2012, however, Mr. Harris has had no new criminal convictions.[1] Instead, starting in 2015, Mr. Harris has worked full-time, mainly in the construction industry. PSR ¶¶ 78, 80-81; *see also* Att. A. Most recently, and up until the time of his arrest in the instant case, Mr. Harris was also working as an in-home health care provider. *See* PSR ¶ 79. However, Mr. Harris was still functionally addicted to drugs, taking them to focus during the day and then to calm down at night, until his arrest in the instant case. *See id.* ¶ 71-72, 77; *see also* Att. A.

In the instant case, Mr. Harris was first arrested by local authorities on October 19, 2019, for the offense of unlawful possession of a firearm located in the glove compartment of his car and possession with intent to distribute pills concealed in his pants. PSR ¶¶ 6-7. Mr. Harris was released on those state charges on October 2, 2019, and thereafter voluntarily commenced a drug treatment program at Healthright 360 to address his long-standing drug addiction, which had led directly to the

---

[1] After 2012, Mr. Harris did have supervision revocations and arrests, mainly related to his drug addiction and traffic offenses, that did not lead to new criminal charges. *See* PSR ¶¶ 37-49.

DEFENDANT'S SENTENCING MEMO
*HARRIS*, CR 20–0027 WHA

1     offense. *Id.* ¶¶ 4, 73.  Nevertheless, while successfully undergoing treatment, Mr. Harris was arrested

2     on February 3, 2020, on a federal indictment charging the same conduct from October 2019 and was

3     ordered detained. *Id.* at p.2.  Since then, Mr. Harris has remained in continuous custody.

4         On February 11, 2020, in his very first appearance before this Court, Mr. Harris pleaded guilty

5     pursuant to an agreement with the government, demonstrating his complete and very early acceptance

6     of responsibility.  *Id.* ¶ 3.  That plea agreement contained a provision, among many others, precluding

7     Mr. Harris from seeking release.  *See* Plea Agreement (Docket #10) (filed Feb. 11, 2020) ¶ 9.  Of

8     course, at that time, no one could have predicted the COVID-19 pandemic that soon swept the world,

9     causing particular problems in the Santa Rita Jail, especially for people with respiratory issues like

10    Mr. Harris, who suffers from asthma.  PSR ¶ 67.  On account of that provision in the plea agreement,

11    Mr. Harris could not seek release from custody, despite his vulnerability to COVID-19 infection.

12    Due to the impacts of the pandemic, Mr. Harris has received no drug treatment while in custody.

13                                             **ARGUMENT**

14         At the time of his arrest on the instant federal case, Defendant Brazil Harris had voluntarily and

15    on his own initiative commenced an intensive drug treatment program after gaining release from state

16    custody on a case alleging the same misconduct as here.  Unfortunately, since his initial appearance

17    in federal court on this case, Mr. Harris has been detained at the Santa Rita Jail, where the recent

18    COVID-19 pandemic has caused havoc, not only with the health and well-being of the inmates (and

19    staff), but also by eliminating any programming that could have permitted him to use his time there

20    constructively, like the drug treatment from which he was removed upon his federal arrest.  A

21    placement in a BOP is not likely to be any improvement.  Instead, Mr. Harris respectfully requests

22    that the Court sentence him to a term of imprisonment of "time served" with a condition of residential

23    drug treatment as part of a highly structured term of supervised release.

24         The advisory guideline range applicable in this case would ordinarily make such a "time

25    served" sentence unlikely.  Consistent with the plea agreement, the U.S. Probation Officer has

26    calculated the advisory guideline range to be 70 to 87 months,[2] and recommends a sentence at the

27  

28    [2] This high guideline range is the largely the result of disparate treatment of similar drugs.  If, for
      example, the 275 pills possessed by Mr. Harris had contained Ecstasy (MDMA) instead of

1   high end of the range, notwithstanding Mr. Harris' long history of drug addiction, his recent efforts

2   towards rehabilitation that were interrupted by the instant federal case, his difficult upbringing, his

3   learning disability that required in an Individualized Education Program at school, and his steady full-

4   time employment since 2015.[3]  The Probation Officer does propose that the Court recommend that

5   Mr. Harris be admitted to the Residential Drug Treatment Program, which would ordinarily reduce

6   Mr. Harris' sentence by one year, but the officer fails to acknowledge that all such BOP

7   programming has been suspended indefinitely due to the effects of the COVID-19 pandemic.  In fact,

8   the U.S. Probation Officer does not in any way take into account the COVID-19 pandemic which has

9   wrought so many changes in our society, not least of which are the costs and benefits of

10   incarceration.

11          Mr. Harris respectfully submits that the Court must take into account the impacts of the

12   COVID-19 pandemic, both at Santa Rita, where Mr. Harris has been detained and is likely to remain

13   for the foreseeable future, and at BOP.  As of July 14, 2020, there have been 8077 coronavirus cases

14   and 148 deaths in Alameda County alone.[4]  At Santa Rita Jail, according to the Sheriff, there have

15   been 108 confirmed coronavirus cases among inmates and staff.[5]

16          Conditions in the jail are, as the Court is no doubt aware, much worse than usual.  Inmates are

17   in tight quarters, even more so with the closure of North County Jail.  Most units have dozens of

18   inmates living together, with two inmates to a cell. Access to personal hygiene items is limited with

19   only those inmates that have certain means able to purchase commissary (better/more soap and other

20   hygiene items).  While the jail has provided each inmate with a mask and one additional bar of soap,

21   it is hardly enough to protect the population.  Additionally, the jail has now restricted all visits to the

22   jail.  No attorney, family, friends, or even experts are allowed into the jail.  Programming at the jail,

23

24   ───────────────────────

25   methamphetamine, the resulting guideline range would have been only 37-46.  *See* U.S.S.G. § 2D1.1
     app. nn.8(D), 9.

26   [3]   The Probation Officer focuses instead on Mr. Harris' criminal history, even though his most recent
     prior conviction is for conduct occurring several years ago in 2012.  *See* PSR Recommendation.

27   [4]  *Coronavirus in California: Map and Case Count*, The New York Times, *at* https://
     www.nytimes.com/interactive/2020/us/california-coronavirus-cases.html (updated regularly).

28   [5]  Alameda County Sheriff, COVID-19 Update *at* https://www.alamedacountysheriff.org/
     admin_covid19.php (updated regularly).

DEFENDANT'S SENTENCING MEMO
*HARRIS*, CR 20–0027 WHA

3

1    including drug treatment, has been discontinued.[6]  Inmates are extremely anxious, and many are

2    trying to stay holed up in their cells to avoid contact.

3           Moreover, even if Mr. Harris is transferred to BOP, conditions in federal prison are also grim.

4    Social visits have been suspended.[7]  As of July 14, 2020, there were 8253 inmates and 874 BOP staff

5    members infected by COVID-19, and 95 inmates have died from it.[8]  The Department of Justice

6    (DOJ) and DOJ Inspector General are conducting investigations into facilities where inmates have

7    died, including at Lompoc, California, where dozens of inmates and staff members tested positive.[9]

8    The Office of the Federal Public Defender has spoken with former clients at BOP facilities who

9    confirm that inmates are scared and unable to distance or otherwise protect themselves.  Moreover,

10   programming such as the Residential Drug Treatment Program has been suspended, except for

11   inmates granted early release to home confinement.[10]  Accordingly, Mr. Harris will not have the

12   usual benefits of drug treatment at the BOP, including a one-year reduction in his sentence.

13          For these reasons, not at all contemplated by the Probation Officer's recommendation in the

14   Presentence Report, it is respectfully submitted that a substantial downward variance from the

15   advisory guideline range is warranted.  Specifically, Mr. Harris respectfully requests that the Court

16   impose a sentence of "time served," to be followed by supervised release with a condition of first

17   residential drug treatment and then a lengthy period of home confinement with electronic monitoring.

18          Mr. Harris, who has always been a hard worker, was finally addressing his ongoing drug

19   addiction following his release from state custody in the instant case when, for no apparent good

20   reason, the federal government took over the prosecution and put that long awaited effort on hold.

21   This Court can remedy that misfortune by crafting a sentence in this case that is unusual but tailored

22   to the specific facts and circumstances of Mr. Harris' life as well as those of the ongoing COVID-19

23   pandemic.

24   _____

25   [6] https://alamedacountysheriff.org/files/COVIDPlan04-05-2020.pdf

26   [7] BOP, BOP Implementing Modified Operations, *at* https://www.bop.gov/coronavirus/covid19_status.jsp.

     [8] BOP, COVID-19 Cases, *at* https://www.bop.gov/coronavirus/.

27   [9] *DOJ Team Reviewing Conditions at Virus-Plagued Federal Prisons; IG leading Separate Probe*, USA Today (April 16, 2020), *at* https://www.usatoday.com/story/news/politics/2020/04/16/doj-launches-review-prison-virus-deaths-infections-mount/5144320002/.

28   [10] https://www.bop.gov/coronavirus/faq.jsp#hc_rdap

1

**CONCLUSION**

2          For the foregoing reasons, the Court should sentence Mr. Harris to a term of imprisonment of

3   "time served," to be followed by supervised release with condition including first residential drug

4   treatment and then home confinement with electronic monitoring.

5

6   Dated:      July 14, 2020                              Respectfully submitted,

7                                                          STEVEN G. KALAR
                                                           Federal Public Defender
8                                                          Northern District of California

9                                          _____/S_____

10                                                         DANIEL P. BLANK
                                                           Senior Litigator

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SENTENCING MEMO
*HARRIS*, CR 20–0027 WHA